**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(TEXARKANA DIVISION)**

| | |
|---|---|
| **GHJ HOLDINGS, LLC,**<br>            **Relator,**<br><br>        **vs.**<br><br>**SUNCAST CORPORATION,**<br>            **Defendant.** | Case No.: 5:11-cv-0022<br><br><br><br>**JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT FOR FALSE PATENT MARKING**

Relator GHJ Holdings, LLC ("Relator") alleges as follows:

**NATURE OF THE CASE**

1.     This is an action for false patent marking under section 292 of the Patent Act (35 U.S.C. §292), which provides that any person may sue to recover the civil penalty for false patent marking.  Relator brings this qui tam action on behalf of the United States of America.

**PARTIES**

2.     Relator is a Texas limited liability company with its principal place of business in Texarkana, Texas.

- 1 -
ORIGINAL COMPLAINT

3.     Defendant Suncast Corporation is an Illinois corporation that can be served through its registered agent, Peter J. Miller at 20 S. Clark St., Suite 2600, Chicago, Illinois 60603.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over Relator's false marking claims under Title 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction over Suncast by virtue of, *inter alia*, Suncast's persistent and continuous contacts with the Eastern District of Texas, including active and regular conduct of business during the relevant time period through its sales in the Eastern District of Texas.

6.     This Court has personal jurisdiction over Suncast because, *inter alia*, Suncast has violated Title 35 U.S.C. § 292, and falsely marked, advertised, distributed and sold products in the Eastern District of Texas.  Further, on information and belief, Suncast has sold falsely marked products in competition with sellers of competitive products in the Eastern District of Texas.  Such sales by Suncast are substantial, continuous and systematic.

7.     Venue is proper in this District under Title 28 U.S.C. §§ 1391(b) and (c) and 1395(a).

## FACTS

8.    Suncast has marked and/or continues to mark its products, including its snow STEELCORE® Shovel and Pusher Model Nos. SN1070, SN1080, SC3270 and SP1580 (collectively, the "Falsely Marked Products") with expired or otherwise inapplicable patents, including at least Canadian Industrial Design Patent Nos. 85,479; 83,553; 83,554; and 83,555 ("the Expired Patents"). Such false marking by Suncast includes marking the Expired Patents upon, affixing the Expired Patents to, and/or using the Expired Patents in advertising in connection with the Falsely Marked Products.

9.    Canada's *Industrial Design Act* (R.S., 1985, c. I-9) affords ten years of protection to industrial designs that are registered. *See* R.S., c. I-8, s. 10 ("[T]he term limited for the duration of an exclusive right for an industrial design is ten years beginning on the date of registration of the design.") Knowing that the Canadian patent laws are largely unknown to the United States public and provide a shorter period of protection for industrial design patents than United States patent law, Suncast has marked its Falsely Marked products with the Expired Patents with the intent to deceive the public.

- 3 -
ORIGINAL COMPLAINT

10.     Canadian Industrial Design Patent Nos. 85,479 was registered December 31, 1998 and expired no later than December 31, 2008.  Nevertheless, Suncast has marked one or more of the Falsely Marked Products with it the after expiration.

11.     Canadian Industrial Design Patent Nos. 83,553 was registered April 3, 1998 and expired no later than April 3, 2008.  Nevertheless, Suncast has marked one or more of the Falsely Marked Products with it the after expiration.

12.     Canadian Industrial Design Patent Nos. 83,554 was registered April 3, 1998 and expired no later than April 4, 2008.  Nevertheless, Suncast has marked one or more of the Falsely Marked Products with it the after expiration.

13.     Canadian Industrial Design Patent Nos. 83,555 was registered April 3, 1998 and expired no later than April 3, 2008.  Nevertheless, Suncast has marked one or more of the Falsely Marked Products with it the after expiration.

14.     Suncast has falsely marked the Falsely Marked Products after the expiration of the Expired Patents.  For example, Suncast placed the Expired Patents on Falsely Marked Products by listing them on the sticker placed on its products.

15.     Suncast has marked the Falsely Marked Products by printing them on the stickers placed on the Falsely Marked Products.  Such markings could have easily been updated to reflect accurate patent information.  Suncast could have easily re-

ORIGINAL COMPLAINT

tagged its products with correct patent numbers, but decided not to even though it currently has had a separate false marking litigation proceeding since October 2010. *See Clip Ventures LLC v. Suncast Corporation*, Civil Action No. CV10-4849-JCS (N.D. Cal. 2010). This blatant disregard of section 292 indicates an intent to deceive by Suncast to maintain its monpoly power, inappropriately, for an essential item – a snow shovel during a Winter.

16.    It was a false statement for Suncast to mark the Falsely Marked Products with expired or otherwise inapplicable patents. Suncast knew that the patent was expired or otherwise inapplicable, but nevertheless marked them on its products after it expired in an attempt to deceive the public.

17.    Suncast is a sophisticated company. Suncast has, and/or regularly retains, sophisticated legal counsel. Suncast has many years of experience applying for patents, obtaining patents, licensing patents, and/or litigating in patent infringement lawsuits. Suncast's patents, including the Expired Patents were prosecuted by sophisticated legal counsel. The patents that Suncast owns or has licensed, including the Expired Patents are or were an important asset to Suncast and are consistently reviewed and monitored in the course of Suncast's business.

18.    A search of PACER indicates that Suncast has been a party to 16 patent related cases since 1991.  As a seasoned veteran of patent litigation, Suncast is surely aware that the life of a patent is finite, that expired patents may not asserted as a basis for infringement, and that it may not falsely claim that a product is covered by an expired patent by marking such product with the expired patent.

19.    Suncast has continually filed hundreds of applications.  Furthermore, Suncast has hired and retained competent attorneys, including specially licensed patent counsel, to assist it with the prosecution of such patent applications.  It is almost certain that Suncast's patent counsel has advised it on more than one occasion that patents have a finite life and expire.

20.    The expiration date of a Canadian Patent is not readily ascertainable by members of the public at the time of the product purchase.  The patent number itself does not provide members of the public with the expiration date of the patent. Basic information about a patent, such as the filing, issue and priority dates associated with a particular Canadian Patent number are available on the Internet. However, access to the Internet is necessary to retrieve that information (meaning that a consumer may not have the ability to retrieve the information, especially while he is in a store making a purchasing decision) and even after retrieving that

ORIGINAL COMPLAINT

information, it does not always include the expiration date of a patent. Rather, a member of the public must also conduct a burdensome legal analysis, requiring specific knowledge of Canadian patent laws concerning patent term expiration.

21. Furthermore, Suncast clearly understands the value of patents and patent marking. In *Suncast Corporation v. StarPlast USA, LLC*, Civil Action No. 9:2007-cv-81076 (S.D. Fla. 2007), Suncast filed a complaint for patent infringement, and paragraph 16 of the complaint alleged that Suncast had "provided public notice that their competing products are covered by the '859 patent by properly marking their products, in accordance with the provisions of 35 U.S.C. § 287." In *Suncast Corporation v. Patrician Products, Inc.*, Civil Action No. 9:2007-cv-80414 (S.D. Fla. 2007), Suncast filed a complaint for patent infringement, and paragraph 16 of that complaint contained a similar allegation regarding patent marking.

22. Suncast's allegations in federal court patent litigation cases regarding patent marking underscore that Suncast has knowledge that a patent that is expired does not cover any product.

23. Suncast knew that it was a false statement to mark the Falsely Marked Products with an expired or otherwise inapplicable patent.

ORIGINAL COMPLAINT

24.     Suncast did not have, and could not have had, a reasonable belief that its products were properly marked, and Suncast knew or should have known that the aforementioned patents had expired.

## INJURY IN FACT TO THE UNITED STATES

25.     Suncast's practice of false marking is injurious to the United States.

26.     The false marking alleged above caused injuries to the sovereignty of the United States arising from Suncast's violations of federal law, specifically, the violation of 35 U.S.C. § 292(a).  The United States has conferred standing on "any person," which includes Relator, as the United States' assignee of the claims in this complaint to enforce section 292.

27.     The false marking alleged above caused proprietary injuries to the United States, which, together with section 292, would provide another basis to confer standing on Relator as the United States' assignee.

28.     The marking and false marking statutes exist to give the public notice of patent rights.  Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

- 8 -
ORIGINAL COMPLAINT

29.     Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain—such as those described in the Expired Patents.

30.     Congress's interest in preventing false marking was so great that it enacted a statute that sought to encourage private parties to enforce the statute.  By permitting members of the public to bring qui tam suits on behalf of the government, Congress authorized private persons like Relator to help control false marking.

31.     The acts of false marking alleged above deter innovation and stifle competition in the marketplace for at least the following reasons: if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; false marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

- 9 -
ORIGINAL COMPLAINT

32.     The false marking alleged above misleads the public into believing that the Expired Patents give Suncast control of the Falsely Marked Products (as well as like products), placing the risk of determining whether the Falsely Marked Products are controlled by such patents on the public, thereby increasing the cost to the public of ascertaining who, if anyone, in fact controls the intellectual property embodied in the Falsely Marked Products.

33.     Thus, in each instance where a representation is made that the Falsely Marked Products are protected by the Expired Patents, a member of the public desiring to participate in the market for products like the Falsely Marked Products must incur the cost of determining whether the involved patents are valid and enforceable.  Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.

34.     The false marking alleged in this case also creates a misleading impression that the Falsely Marked Products are technologically superior to previously

- 10 -
ORIGINAL COMPLAINT

available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

35.     Every person or company in the United States is a potential entrepreneur with respect to the process, machine, manufacture, or composition of matter described in the Expired Patents. Moreover, every person or company in the United States is a potential competitor with respect to the Falsely Marked Products marked with the Expired Patents.

36.     Each Falsely Marked Product or advertisement thereof, because it is marked with or displays the Expired Patents, is likely to, or at least has the potential to, discourage or deter each person or company (itself or by its representatives), which views such marking from commercializing a competing product, even though the Expired Patents do nothing to prevent any person or company in the United States from competing in commercializing such products.

37.     The false marking alleged in this case and/or advertising thereof has quelled competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

38.     The false marking alleged in this case constitutes wrongful and illegal advertisement of a patent monopoly that does not exists and, as a result, has

ORIGINAL COMPLAINT

resulted in increasing, or at least maintaining, the market power or commercial success with respect to the Falsely Marked Products.

39.    Each individual false marking (including each time an advertisement with such marking is accessed on the Internet) is likely to harm, or at least potentially harms, the public.  Thus, each such false marking is a separate offense under 35 U.S.C. § 292(a).

40.    Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. § 292(b).

41.    For at least the reasons stated in paragraphs 2 to 40 above, the false marking alleged in this case caused injuries to the sovereignty of the United States arising from violations of federal law and has caused proprietary injuries to the United States.

## **CLAIM**

42.    For the reasons stated in paragraphs 2 to 41 above, Suncast has violated section 292 of the Patent Act by falsely marking the Falsely Marked Products with intent to deceive the public.

## PRAYER FOR RELIEF

43.    Relator thus requests this Court, pursuant to 35 U.S.C. § 292, to do the following:

>    A.    enter a judgment against Suncast and in favor of Relator that Suncast has violated 35 U.S.C. § 292 by falsely marking products with knowledge that the patent has expired for the purpose of deceiving the public;

>    B.    order Suncast to pay a civil monetary fine of $500 per false marking offense, or an alternative reasonable amount determined by the Court taking into consideration the total revenue and gross profit derived from the sale of falsely marked products and the degree of intent to falsely mark the products, one-half of which shall be paid to the United States and the other half to Relator;

>    C.    enter a judgment declaring that this case is "exceptional," under 35 U.S.C. § 285 and award in favor of Relator, and against Suncast, the costs incurred by Relator in bringing and maintaining this action, including reasonable attorneys' fees;

ORIGINAL COMPLAINT

D.     order that Suncast, its officers, agents, servants, employees, contractors, suppliers, and attorneys be enjoined from committing new acts of false patent marking and be required to cease all existing acts of false patent marking within 90 days; and

E.     grant Relator such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

44.     Relator demands a jury trial on all issues so triable.

Dated: February 4, 2011                     Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
   Texas Bar No. 24038912
   randall@glgnow.com
Christopher Johns
   Texas Bar No. 24044849
   chris.johns@glgnow.com
Christopher A. Honea
   Texas Bar No. 24059967
   chris.honea@glgnow.com
GARTEISER LAW GROUP
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415)785-3762
[Fax] (415)785-3805

ATTORNEYS FOR GHJ HOLDINGS, LLC

- 14 -
ORIGINAL COMPLAINT